## Warrington v. Lakeland School District Directors

*Robert H. Sayers,* for plaintiffs.
*Charles S. DeLaney,* for defendant.

CONABOY, *J.,* May 29, 1974 — This action was originally started by a complaint wherein plaintiffs sought a rule to show cause why a preliminary injunction should not issue, ordering defendant to provide school bus service to the children of plaintiffs who live on Poor Farm Road in

Greenfield Township. A rule as such was not granted and the matter was subsequently placed on the equity list on the merits.

## DISCUSSION

The testimony reveals the following: That one of the plaintiffs, Mrs. Dorothy Kurtz, lives on Poor Farm Road and has a daughter thirteen years of age who attends Mayfield School (part of defendant's school district); that Jacqueline Warrington, also one of the plaintiffs, lives on Poor Farm Road and has two sons who attend elementary school in Greenfield Township, also part of the defendant's School District.

Poor Farm Road is a township road with a dirt surface. It intersects with Arnold Road and with Ridge Road, both of which are hardtop rural roads. A school bus runs along Arnold and Ridge Roads providing service for school children in that area. The Kurtz's home is 2/10 of a mile from the intersection of Poor Farm Road and Arnold Road. The Warrington home is 3/10 of a mile from the intersection of Poor Farm Road and Ridge Road. The children of these two plaintiffs are required presently to walk to the aforementioned intersection to board the school bus. Plaintiffs would require defendant school district to have the school bus travel along Poor Farm Road to pick up their children, so that the children would not be required to walk along Poor Farm Road to the aforementioned bus stop. The parents claim that the road is dangerous and that it is hazardous for the children to walk along it because it is difficult to see traffic along the road at times; because it is very cold for such a walk in bad weather; because the roadway is not in good shape; because it is often

dark when the children must walk along the road and there are no lights along Poor Farm Road; because some animals are allowed to roam in this area and because in general, they claim it is not safe for youthful pedestrian traffic. Plaintiffs further claim that they took this case to the School Board since there had been bus service along Poor Farm Road for many years prior to 1973. It was plaintiffs' contention that the School Board arbitrarily and capriciously refused to consider their request and based their refusal solely on the premise that providing bus service along this particular road would "set a precedent" for the rest of the school district.

Testimony for the defendant indicated that the matter was considered by the members of the School Board at four different meetings from September to December of 1973; that the matter was referred to the committee on transportation under the direction of the elementary school principal who is in charge of the school district's transportation; that the Superintendent of Schools; the President of the School Board; the elementary principal; the school solicitor; and several others personally went to the site and inspected Poor Farm Road. In addition to this inspection, they also had a report from the contract bus driver who stated that he did not want to drive over the said road because the road was in such poor condition for vehicular traffic.

The Board determined the road is in no condition for vehicular traffic particularly bus traffic; that there are large ruts in the road; and that it was possible for a bus to either slide into or fall into ditches along the roadway; that it was almost impossible for another vehicle to pass by the bus

on this road; that it was impossible for the bus to turn around on this road; and that overhanging branches scraped the top of the bus and caused hazardous driving conditions. It was the conclusion of the Board that it was not hazardous for plaintiffs' children to walk the approximate half-mile to the bus stop, but that it would be hazardous for a bus to traverse this road. It was their opinion that the safety of 50 or 60 children riding the bus would be jeopardized if the bus traversed Poor Farm Road. It was further the bus driver's testimony that Poor Farm Road was not part of his contract with the School District but that he for several years had serviced this road as a matter of courtesy. He testified further that he did not think he could continue to drive a bus over this road because it created a serious hazard to the 50 or 60 youthful passengers he carries in the bus.

Pictures introduced in evidence indicated this to be a rural dirt road in a very bad state of repair; it is obviously a narrow road and certainly the conclusions on the condition of the road justified the conclusions reached by the Board.

Counsel for both parties agreed with the court that the issue involved was whether or not the decision of the Board in failing to provide bus service along this particular road was an arbitrary and capricious decision. Counsel for plaintiffs submits that secondary issues are whether or not Poor Farm Road constitutes a hazard to the safety of school children using it as a walking road and whether or not the travel of a school bus along Poor Farm Road is hazardous to the children riding the bus. Both counsel referred to the various sections of the School Code involved. However,

there is no dispute as to the requirements or the allowances under the code for providing of bus service.

The main issue to be determined is a factual issue based upon the evidence which the School Board had before it and/or which was heard by the court, upon which the Board's action was founded.

The court cited the case of Zebra v. Pittsburgh School District, 449 Pa. 432, 296 A.2d 748 (1972), as setting the jurisdiction of the court in reviewing the School Board's actions or when a complaint such as this is filed. The court also referred to Rhoades v. Abington Twp. Sch. Dist., 424 Pa. 202, 226 A.2d 53 (1967), wherein Justice Musmanno very aptly reviewed the meaning of the phrase health, welfare and safety of school children.

Within the framework of these cases it is difficult to say that plaintiffs have made out a case which would allow the court to interfere with the judgment of defendant School Board. There is little evidence which would tend to show caprice or lack of use of good reason.

## CONCLUSIONS

The record would indicate that the Board gave serious consideration to all of the problems involved and balanced the equities in favor of the safety of 50 or 60 children who daily ride the school bus involved. Act No. 372, by its terms, confers upon the Board a discretionary power as to whether they will or will not provide bus service. See Act of March 10, 1949, P. L. 30, as amended, 24 P.S. §13-1361.

The courts of this Commonwealth have repeatedly held that the exercise of a School Board's discretion will not be interfered with unless the

action is arbitrary, based on a misconception of law or ignorance through a lack of inquiry into the facts: Zebra v. Pittsburgh School District, supra; York v. Montrose Area School District, 9 Pa. Commonwealth Ct. 379, 307 A.2d 478 (1973). Plaintiff must sustain a heavy burden of proof before a discretionary power of the board will be overturned: York, supra. In further support see Bd. of Dir. of Sch. Dist. of City of Scranton v. Roberts et al., 13 Pa. Commonwealth Ct. 464, 320 A.2d 141 (1974).

The Board in this case thoroughly considered the problem presented to it. They reached a considered and well thought-out administrative decision. It is not the function of the courts to second-guess such decisions or to act in the role of a super school board. Whether this court or any other body would have reached a different decision based on the same facts is of no consequence. The people who made this decision were elected to handle such matters and their decisions can only be reviewed or reversed by the courts within the framework of the law referred to herein. We find no actions on the part of the Board which would allow an interference in their decision by this court.

Now, therefore, May 29, 1974, the court enters the following

## DECREE NISI

1. The prayer of the petition is dismissed.
2. Each party to pay its own costs.

This decree to become final unless exceptions hereto are filed within 20 days from this date.